```
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
                                               06 CV 2615 (RJH)
Debra Pearlman,                                ECF CASE

                    Plaintiff,
                                               COMPLAINT
        -against-                              AND JURY
                                               DEMAND
AmeriPride Services Inc. and Dan Carroll,


                    Defendants.
--------------------------------------------X
```

                          INTRODUCTION

        1.  This case involves discrimination against plaintiff on

the basis of sex and religion, violation of the Equal Pay Act,

unlawful retaliation against plaintiff, failure to pay wages

and/or commissions and unlawful termination in violation of the

implied covenant of good faith and fair dealing.

                          JURISDICTION

        2.  This case arises under 42 U.S.C. §§2000e, et seq., as

amended by the Civil Rights Act of 1991; the Equal Pay Act, 29

U.S.C. §§206, et seq.; New York Executive Law §§290, et seq.; New

York Labor Law §§191, et seq.; and the New York City Human Rights

Law, NYC Admin. Code §§8-101, et seq.  Jurisdiction is conferred

upon this Court by 42 U.S.C. §§2000e-5(f) and (g) and 28 U.S.C.

§§1331, 1332, 1343, 2201 and 2202.  Jurisdiction over the state

claims is further invoked pursuant to 28 U.S.C. §1367 and the

Court's pendent jurisdiction.  Venue is based on plaintiff's

residence.

3. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of the unlawful acts alleged herein.  Pursuant to a dual filing arrangement, and in accordance with the EEOC's normal operating procedures, those charges, on information and belief, were also forwarded to and filed with the New York State Division of Human Rights.

4. On or about January 10, 2006, plaintiff received a right to sue letter from the EEOC authorizing her to pursue this matter by filing a lawsuit within 90 days of receipt of the right to sue letter.  As a result, plaintiff has fully complied with all administrative and statutory prerequisites.

<u>PARTIES</u>

5. Plaintiff Debra Pearlman is a Jewish female whose date of birth is July 27, 1964.  She is resident of New York State. Plaintiff worked for defendant AmeriPride Services Inc. as an employee from March 2003 through March 2005.

6. On information and belief, defendant AmeriPride Services Inc. (hereinafter "AmeriPride"), is a Delaware corporation employing more than 6000 employees with its principal place of business in Minnesota.

7. Defendant Dan Carroll is a resident of Massachusetts. He is a General Manager of AmeriPride responsible for the region

known as the Hartford branch, covering the states of New York, Connecticut, and New Jersey.  The Hartford branch included offices, a plant and a depot in Hartford, Connecticut, as well as depots and corresponding service areas in Bridgeport, Connecticut; Florida, New York; and Long Island, New York.  The Hartford branch was part of Defendant AmeriPride's Northeast Region, which spanned from Ohio to Massachusetts, and included New York.  During all times relevant hereto, on information and belief, Defendant Dan Carroll was employed by AmeriPride and had the power to do more than carry out personnel decisions made by others, including, but not limited to, the power to hire and fire employees, including plaintiff.

<u>FACTUAL ALLEGATIONS</u>

8.  Plaintiff was hired at AmeriPride in March 2003 as a sales representative.  Plaintiff worked in New York State. Plaintiff was paid a salary of $40,000 and was supposed to receive bonuses and commissions, as well.

9.   On information and belief, at the time of plaintiff's termination, plaintiff was the only Jewish employee in the Northeast Region.

10.  Plaintiff was an extremely successful sales person, ranked as one of the top three sales representatives in the East Coast region, out of a total of about 32 sales representatives. Plaintiff's territory as a salesperson included Orange, Rockland,

3

Dutchess, Putnam and Ulster Counties in New York State.

11.  Initially, as a sales person, plaintiff reported to Scott Dwyer, a Sales Manager, who also supervised approximately five or six other sales representatives.  Mr. Dwyer supervised the Florida, New York depot and corresponding service area.

12.  In January 2004, plaintiff was informed that Brad Sayles, the sales manager who supervised the sales representatives in the Hartford, Connecticut service area, was resigning.  Plaintiff was informed that Mr. Sayles would be replaced by Mr. Dwyer, who would work out of the Hartford Sales Office.

13.  Plaintiff was given Mr. Dwyer's position as Sales Manager, working out of the Florida, New York depot.  In that role, she covered a territory consisting of the Bronx, New York City; Queens, New York City; Long Island, New York; New Jersey and some of New York City's northwestern suburbs.  She supervised salespeople based in these locations and spent a significant part of her work week with salespeople in these locations.

14.  In her new role, plaintiff reported to Defendant Carroll with another reporting relationship to Group Sales Manager, Mike Borgos.

15.  Plaintiff was told that she would receive a salary of $50,000, which was $10,000 more than the base salary in her prior position.  Plaintiff was also informed that as a sales manager,

4

she would receive a bonus based on her team's sales results
pursuant to a fixed formula.  However, plaintiff was told that
because she was being promoted, plaintiff would have to forfeit
the commissions the company owed her as a result of her work as a
sales representative.  On information and belief, these
commissions totaled about $10,000.  On information and belief, no
male or non-Jewish sales representative was required to forfeit
their commissions in order to be promoted.

16.  Plaintiff did not receive equal pay for her work.  On
information and belief, plaintiff was paid less than Scott Dwyer
and Brad Sayles, although plaintiff was more successful than
either Mr. Dwyer or Mr. Sayles. Plaintiff's job was substantially
equal to the positions held by Mr. Dwyer and Mr. Sayles and
required the same skill, effort, and responsibility.  Plaintiff
performed her work under more challenging working conditions than
Mr. Dwyer or Mr. Sayles.

17.   On information and belief, of 30 to 40 sales managers
employed by the company nationwide, only four were women,
including plaintiff.  Plaintiff was the only female sales manager
employed by AmeriPride in the entire East Coast Region.

18.  Plaintiff learned that Defendant Carroll was not
supportive of her promotion.  At the time of plaintiff's
promotion, Mike Borgos emphasized to plaintiff that he was the
one responsible for plaintiff's promotion.  Scott Dwyer told

5

plaintiff that Defendant Carroll had stated that he did not really want plaintiff to be promoted.  Defendant Carroll said to plaintiff directly that plaintiff's promotion was his way of allowing plaintiff to put the title 'Sales Manager' on plaintiff's resume.  Plaintiff understood this to mean that he intended that she be a sales manager in name only.

19.  In her role of sales manager, plaintiff was treated significantly worse than her male non-Jewish counterparts. Although plaintiff was given the position of supervising the Florida, New York sales representatives, at the time of her promotion all but one of the sales representatives that had been in place in that area were reassigned to Scott Dwyer. For example, plaintiff's prior territory, which was very lucrative, was not assigned to plaintiff, even though it was geographically part of plaintiff's territory.  Instead, it was assigned to Mr. Dwyer.  Plaintiff was assigned to supervise the most poorly performing employees, while the better performing employees were assigned to Mr. Dwyer.  At the time plaintiff became sales manager, the sales in the territories to which Plaintiff was newly assigned were low.

20. In addition, the most lucrative proposals that plaintiff had developed in her role of sales person in the area of Florida, New York were given to Scott Dwyer's team, even though they were located in her new territory.  Similarly, the contacts and

6

commissions that came from plaintiff's prior efforts as a sales
representative were given to a sales representative on Mr.
Dwyer's team.  Until July 2004, that person was assigned to Mr.
Dwyer's team even though he worked out of the Florida, New York,
depot where plaintiff was based.

21.  Although Scott Dwyer had a regular office in a
commercial building with a door, plaintiff was assigned to work
in an unheated space that plaintiff shared with the service
manager.  There was no door to plaintiff's office. Plaintiff was
the only female employee at the Florida, New York depot.  The two
bathrooms available to plaintiff were both used by men, and only
one of these bathrooms had a lock on it.  Both of these bathrooms
were in constant disrepair and maintained in disgusting
conditions to the point where they were virtually unusable,
despite repeated complaints by plaintiff to the depot manager and
Defendant Carroll.

22.  Plaintiff observed that Defendant Carroll made it a
practice to meet regularly with Mr. Dwyer, even though he would
not meet with plaintiff.  On numerous occasions plaintiff asked
to meet with him, but he said he was too busy and suggested that
plaintiff telephone him instead.

23.  In addition, although Plaintiff held an equal position
to Scott Dwyer, Mr. Dwyer instructed April Bailey, who was
supposed to perform administrative services for both plaintiff

and Mr. Dwyer, that Ms. Bailey reported only to Mr. Dwyer and that Ms. Bailey should not perform services for plaintiff without his permission.  Mike Borgos intervened and instructed Mr. Dwyer, Ms. Bailey and Defendant Carroll that this was not the case but the problem persisted.

24.  Defendant Carroll attempted on numerous occasions to remove sales manager functions from plaintiff and assign them to Scott Dwyer.  For example, in June 2004, Defendant Carroll suggested that Mr. Dwyer create plaintiff's strategic plan. Again, Mike Borgos intervened, but Mr. Carroll persisted in his attitude toward, and treatment of, plaintiff.

25. Moreover, plaintiff suffered from a persistent problem of Scott Dwyer improperly getting credit for sales made by plaintiff and her subordinates. On several occasions plaintiff pointed out to Defendant Carroll and/or Mike Borgos situations in which this had occurred.  On each occasion, the individual error was corrected, but the problem persisted.

26.  In addition, Scott Dwyer had access to the company's underlying commission database, so he could enter it and change numbers manually.  Plaintiff asked for permission to do the same, but the office manager told her she didn't know how he did it.

27.  In addition, plaintiff complained repeatedly to Defendant Carroll that plaintiff was not given access to essential parts of the company's computer network.  Scott Dwyer

8

and the male non-Jewish the other sales managers were able to get
reports off the corporate website and were therefore able to
generate reports for their sales team.  Plaintiff was at a
disadvantage as a sales manager because plaintiff could not
obtain necessary information to perform plaintiff's job better.

28.  Plaintiff repeatedly received obscene emails on her
home computer over the company computer network for the few
months just before plaintiff's employment was terminated.  To
plaintiff's knowledge, no one else in the region received such
emails.  Moreover, on information and belief, within defendant
AmeriPride's corporate email network, there exists an extremely
secure filtering system, and it was therefore very unusual that
anyone would get such emails.  Plaintiff therefore reasonably
concluded that, as the only woman sales manager in the region,
and one of the very few nationwide, she was being specifically
targeted.  These emails were explicit, humiliating, and made
plaintiff very uncomfortable.  Plaintiff repeatedly complained
about these emails to the depot service manager and Mike Borgos,
but prompt corrective action was not taken.  Plaintiff had no
knowledge of any sexual harassment policy at defendant
AmeriPride.

29.  On almost every occasion that plaintiff took off
because she needed to observe a Jewish holiday, Defendant Carroll
made a negative comment.  This was true even though plaintiff

9

asked for fewer than four such days (and stated she was willing to take them as personal/sick days if necessary).

30.  In addition, Scott Dwyer started selling to several accounts in plaintiff's territory.  Plaintiff complained about this to Defendant Carroll and Mike Borgos.  Mr. Carroll said that he was going to allow Mr. Dwyer to continue to do this.

31.  Despite the difficulties that plaintiff faced, plaintiff was very successful as a sales manager, and in November 2004, plaintiff succeeded in bringing in a major contract with the Metropolitan Transit Authority ("MTA").

32. As a result, in January 2005 Plaintiff was able to report to Mike Borgos her prediction that for the first quarter of 2005 her team would produce 678% of her budget making it the most successful team of the 6 teams in the whole region.  By contrast, the prior year, the same territory under Brad Sayles' and Scott Dwyer's direction had produced much less.

33.  Plaintiff's results were so good that in January 2005 Mike Borgos praised plaintiff and her subordinates in a group email.

34. In January 2004, plaintiff met with Dick Boudreaux, to whom Mr. Borgos reported, and told him that she wanted to become more involved with the business.  As a result, in January 2005, plaintiff received her first and only invitation to a staff meeting.  This consisted of a meeting spanning five weekly

sessions, which was held at a plant in Worcester, MA.  Because
Defendant Carroll refused to pay for her to stay in a hotel,
Plaintiff commuted the seven hours daily to these sessions.  No
one else commuted that far.

35.  During one of these sessions, Defendant Carroll stated
to plaintiff, "You have to get over your penis envy" in the
presence of Scott Dwyer and Dan Wright, the sales manager for the
Worcester plant.  Plaintiff reported this statement to Mike
Borgos, but he advised her not to complain to others in company
management because, in his view, plaintiff's complaint would be
fruitless because the witnesses would claim they had amnesia.

36.  Throughout the months of February and March 2005,
plaintiff's subordinates and plaintiff continued to produce more
sales than anyone else in the region, far more than their budget
and more than Scott Dwyer's team.

37.  Moreover, plaintiff's performance and that of her
subordinates was way ahead of the performance in the same area
the prior year, when the team was led by a combination of Brad
Sayles and Scott Dwyer.  For example, during the week of February
18, 2005, the plaintiff's team was ahead of the prior year by
more than 500%.

38.  As a result of plaintiff's outstanding results, on
information plaintiff was entitled to bonuses which were never
paid.  On information and belief, other male, non-Jewish sales

managers, for example, Dan Wright, were given bonuses beyond those in the formula that the company applied to plaintiff.

39. On or about March 24, 2005, Defendant Carroll terminated plaintiff and one newly hired sales representative.

40. Defendant Carroll told plaintiff that he had decided to fire her because she brought in more business than the company could service. He also said the company had decided to stop bringing on new business in the area from Westchester County, New York up through Ulster County, New York and in New Jersey and to stop handling accounts in these areas.

41. Although plaintiff was told that her position was going to be eliminated, Scott Dwyer effectively replaced plaintiff as sales manager for the New York/New Jersey area. Defendant AmeriPride continues to service its New York/New Jersey accounts and has expanded some of these accounts as well, under the supervision of Scott Dwyer. Moreover, plaintiff's territory had also included Long Island, Queens, and the Bronx and defendant AmeriPride continues to sell and service accounts in those areas.

42. Plaintiff was replaced by Scott Dwyer even though he was less qualified for the position. Scott Dwyer's performance in sales did not approach that of plaintiff. Moreover, while plaintiff had wide experience in sales and in the apparel and the printing industries, with extensive knowledge of fabric, fibers,

emblems, proofs, and artwork, Mr. Dwyer's experience was limited
to telephone sales.

43. In addition, with the exception of Andrew Kmec, the
newly hired sales representative who was terminated with
plaintiff, on information and belief, all of plaintiff's
subordinates (all of whom were male and non-Jewish) are still
selling for the company in the New York and New Jersey area, and
servicing company accounts.  On information and belief, they now
report to Scott Dwyer.  All revenue generated by plaintiff's team
is now credited to Mr. Dwyer as well.

44. At the time of plaintiff's termination, there were
comparable positions available which plaintiff qualified for, but
which were not offered to her.

45. For example, soon after plaintiff's termination, one of
the male sales representatives, Rob Rake, who reported to
plaintiff, was promoted and a new position in training was given
to him.  Plaintiff would have been more qualified than he for
that position.  Moreover, that position is based out of an office
that is less than 40 minutes from plaintiff's home.

46. In addition, at the time plaintiff was terminated, Mike
Borgos was being trained to be a General Manager, so there was an
anticipated vacancy for Group Sales Manager.  Shortly after
plaintiff's termination, Mr. Borgos was, in fact, placed in a
General Manager position.  However, Ms. Pearlman was not offered

13

the Group Sales Manager position vacated by Mr. Borgos and the position went to another male non-Jewish employee instead.

47.   On information and belief, there are no longer any female sales managers in the East Coast Region and there are no longer any Jewish employees in the Northeast Region.

48.   Plaintiff's commissions were also artificially reduced as the result of errors and mis-attributing on the part of Defendant AmeriPride.

49.   Shortly prior to her termination, plaintiff brought in the MTA as a major client, as described above, and therefore, at the time of her termination, she was beginning to be owed substantial commissions with regard to that account and others. By terminating plaintiff, defendant AmeriPride received the benefit of plaintiff's efforts without having to pay plaintiff her earned commissions.

50.   The actions of defendants AmeriPride and Carroll constitute discrimination and retaliation in an extremely damaging form.  As a result of the defendants' illegal conduct, plaintiff suffered economic loss, severe humiliation and extreme distress and physical symptoms and anxiety.  Plaintiff's reputation has been severely damaged and her earning capability threatened and disrupted by defendants' conduct.

FIRST CAUSE OF ACTION

51.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-50 as if fully set forth herein.

52.  Defendant AmeriPride, in violation of 42 U.S.C. §§2000e, et seq., as amended, discriminated against plaintiff on the basis of her sex and religion with regard to the terms and conditions of her employment; by creating a hostile work environment on the basis of her sex and religion; and by terminating her.

SECOND CAUSE OF ACTION

53.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-52 as if fully set forth herein.

54.  Defendant AmeriPride retaliated against plaintiff because of her claims of discrimination in violation of 42 U.S.C. §§2000e, et seq.

THIRD CAUSE OF ACTION

55.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-54 as if fully set forth herein.

56.  Defendant AmeriPride retaliated against plaintiff because of her requests for religious accommodation in violation of 42 U.S.C. §§2000e, et. seq.

FOURTH CAUSE OF ACTION

57.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-56 as if fully set forth herein.

15

58. Defendant AmeriPride violated the Equal Pay Act, 29 U.S.C. §206 by discriminating on the basis of sex in its payment of wages.

<u>FIFTH CAUSE OF ACTION</u>

59.  Plaintiff repeats and reallege the allegations contained in paragraphs 1-58 as if fully set forth herein.

60.  Defendants, in violation of New York Executive Law §290 <u>et</u> <u>seq.</u>, discriminated against plaintiff on the basis of her sex and religion with regard to the terms and conditions of her employment; by creating a hostile work environment on the basis of her sex and religion; and by terminating her.

<u>SIXTH CAUSE OF ACTION</u>

61. Plaintiff repeat and reallege the allegations contained in paragraphs 1-60 as if fully set forth herein.

62.  Defendants, in violation of New York Executive Law §290 <u>et</u> <u>seq.</u>, retaliated against plaintiff as a result of her complaints of discrimination.

<u>SEVENTH CAUSE OF ACTION</u>

63.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-62 as if fully set forth herein.

64.  Defendant AmeriPride retaliated against plaintiff because of her requests for religious accommodation in violation of New York Executive Law §290, <u>et</u> <u>seq.</u>

16

<u>EIGHTH CAUSE OF ACTION</u>

65.  Plaintiff repeat and reallege the allegations contained in paragraphs 1-64 as if fully set forth herein.

66.  Defendant Carroll aided, abetted, incited, compelled and/or coerced the doing of acts forbidden under the New York Executive Law in violation of New York Executive Law §296(6).

<u>NINTH CAUSE OF ACTION</u>

67.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-66 as if fully set forth herein.

68.  Defendant willfully, knowingly, deliberately and voluntarily disregarded its obligations to pay wages and/or commissions under Labor Law §§191, <u>et</u> <u>seq</u>.

<u>TENTH CAUSE OF ACTION</u>

69.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-68 as if fully set forth herein.

70.  Defendant AmeriPride violated the implied covenant of good faith and fair dealing by discharging plaintiff in order to avoid paying her commissions.

<u>ELEVENTH CAUSE OF ACTION</u>

71.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-70 as if fully set forth herein.

72.  Defendants, in violation of NYC Admin. Code §8-107(1)(a), <u>et</u> <u>seq.</u>, as amended, discriminated against plaintiff on the basis of her sex and religion with regard to the

terms and conditions of her employment; by creating a hostile work environment on the basis of her sex and religion; and by terminating her.

### TWELFTH CAUSE OF ACTION

73.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-72 as if fully set forth herein.

74.   Defendants, in violation of NYC Admin. Code §8-107(1)(a) et seq., as amended, retaliated against plaintiff as a result of her complaints of discrimination.

### THIRTEENTH CAUSE OF ACTION

75.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-74 as if fully set forth herein.

76.   Defendant AmeriPride retaliated against plaintiff because of her requests for religious accommodation in violation of NYC Human Rights Law in violation of NYC Admin. Code §8-107(6).

### FOURTEENTH CAUSE OF ACTION

77.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-76 as if fully set forth herein.

78.   Defendant Carroll aided, abetted, incited, compelled and/or coerced the doing of one or more acts forbidden under the NYC Human Rights Law in violation of NYC Admin. Code §8-107(6).

79.  A copy of this complaint will be served on the New York City Human Rights Commission and the New York City Department of Law.

WHEREFORE, plaintiff respectfully demands:

a. That this Court declare that defendants' actions constitute illegal discrimination in violation of Title VII, as amended, New York Executive Law §§290, et seq. and NYC Admin. Code §8-107(1)(a), and that this Court declare that defendants' actions violate the Equal Pay Act and the New York State Labor Law, §§191, et seq.

b. That a permanent injunction be entered ordering defendants to reinstate plaintiff, restore her seniority to her dates of termination, and directing defendants and their employees and agents to cease and desist from any and all acts of discrimination against plaintiff

c. That plaintiff be awarded appropriate compensation for her loss of earnings, together with interest.

d. That plaintiff be awarded wages and/or that were unlawfully withheld.

e. That plaintiff be awarded liquidated damages.

f. That plaintiff be awarded compensatory damages against the defendants in the amount of $1,000,000.

g. That plaintiff be awarded punitive damages against the defendants in the amount of $1,000,000.

h.  That plaintiff receive of the defendants reasonable attorneys' fees, together with all Court costs.

i.  That this Court grant such additional relief as the interests of justice may require.


<u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury of this action.


Dated:  New York, New York          Yours, etc.,
        April 3, 2006

                                    RITZ & CLARK, LLP
                                    Attorneys for Plaintiff
                                    40 Exchange Place, Suite 2010
                                    New York, New York  10005
                                    (212) 321-7075


                                    by <u>/s                              </u>
                                          MUNIR PUJARA (MP 4049)